## LEONARD W. CANDLER *vs.* WM. H. L. FISHER and wife, and others.

Neither an original nor a *supersedeas* judgment, rendered by a justice of the peace, is a *lien* upon *land*, whether the same be or not returned to or filed in the office of the county clerk, before or after the death or removal of the justice, and *such clerk* has *no authority* to issue a *fi. fa.* thereon.

A *fi. fa.* and *vendi.* issued upon such a judgment, by the clerk of the county, are not merely *irregular* and *voidable*, but mere *nullities* and *absolutely void*, and may be declared so even when called in question *collaterally.*

APPEAL from the equity side of the Circuit court for Montgomery county.

The bill in this case was filed by the appellant, on the 6th of July 1852, against the appellees, alleging that, on the 20th of August 1842, John Candler recovered a judgment before a justice of the peace, against Fisher, for $41.15, with interest from the 17th of that month, and 83⅓ cents costs, and that Fisher being indebted to sundry other persons, in large sums of money, which he was unable to pay, and contriving to deceive and defraud his creditors, and hinder and delay execution of the aforesaid judgment, and the collection of the money due thereon, and other debts due by him, afterwards, on the 28th of November 1842, conveyed to Asa Clagett, all his real estate, as by a copy of the deed, "exhibit A," appears: that on the 24th of August 1843, said John Candler sued out of Montgomery county court, a writ of *fi. fa.* on the aforesaid judgment, which was levied by the sheriff upon Fisher's interest in the land conveyed by exhibit A, and the same was sold under a *vendi. exponas,* on the 26th of August 1844, to the complainant, and was duly conveyed to him by the sheriff's deed, "exhibit B," dated the 20th of November 1844; that on the 7th of March 1845, Fisher and wife, for the consideration of $50, conveyed all their interest in this land to the complainant, as per "exhibit. C;" that ever since the execution of this last deed, complainant has been in possession of the land, and has recently sold the same and entered into an obligation to make a good title thereto, which he cannot

do whilst the deed from Fisher to Clagett stands uncancelled, though he is advised that the same is fraudulent and void. The bill then prays that this deed may be vacated and annulled, and for general relief.

Exhibit A purports to be a covenant by which Fisher, in consideration of natural love and affection for his wife and children, covenants with Clagett, as trustee, and his heirs, to stand seized of the property, real and personal, therein mentioned, for the use of himself for life, without impeachment for waste, and after his death for the use of his wife for life, and after her death for the use of their children and their heirs, and contains a provision, that the property can only be sold by the consent of Clagett and Mrs. Fisher.

The answer of Fisher and wife admits the execution of the deed A, but denies that it was executed with any fraudulent intent; they admit that there were judgments outstanding against Fisher at the date of this deed, but aver that they were afterwards paid off by a sale of part of the property by the trustee, Clagett; they insist that the execution and sales, under which the complainant claims, operated only on the life estate of Fisher, and that exhibit C was executed under restraint, and without the consent of Clagett.

The proof shows that the land mentioned in these deeds was about one hundred acres, and was worth $7 or $8 per acre. The purport of the rest of the testimony in the case is fully stated in the opinion of this court.

The court below (BREWER, J.) passed a decree, dismissing the bill with costs, from which the complainant appealed.

The cause was argued before ECCLESTON, TUCK and BARTOL, J.

*Richard J. Bowie* for the appellant, argued:

1st. Whether the legal process under which the complainant claimed in part was irregular or not, the deed from Fisher and wife to Clagett was fraudulent and void, because it hindered, delayed and exposed to expense and difficulty, the then existing creditors in collecting their debts, and being void,

the complainant as purchaser for a valuable consideration, claiming under the subsequent deed from these same parties, is entitled to the relief he asks. 1 *Amer. Lead. Cases,* 77 to 79. 6 *Md. Rep.,* 172, 199, *Worthington vs. Bullitt,* and 3 *Md. Ch. Dec.,* 99. 3 *Md. Rep.,* 334, *Baxter & wife, vs. Sewell,* and 2 *Md. Ch. Dec.,* 447. This deed being to a *stranger* cannot operate as a *covenant to stand seized to uses,* for the consideration, to support such an instrument, must be *blood* or *marriage.* 16 *Johns.,* 516, 527. Again, a purchaser at sheriff's sale is entitled to creditors' rights, (4 *Wash. C. C. Rep,,* 129, 138,) and the fraud which would invalidate a deed, may be availed of by a subsequent purchaser.

2nd. That the irregularity of the process was not such as, to avoid the complainant's title. At most the process was *voidable* and not *void,* and cannot therefore be impeached in this collateral way. 12 *G. & J.,* 442, *Miles vs. Knott.* 6 *H. & J.,* 204, *Barney vs. Patterson.* But the clerk of the county court had, and still has, the right to issue writs of *fieri facias* upon *supersedeas* judgments, confessed on judgments. rendered before a single justice of the peace. The act of 1791, ch. 67, sec. 4, conferred this power upon him, and that act is still in force, unrepealed, as appears by the act of 1809, *ch.* 205, *sec.* 4.

*N. Brewer, Jr.,* for the appellees, argued:

1st. That the appellant acquired no title by virtue of his purchase at sheriff's sale. A judgment rendered by a justice of the peace is not a *lien* upon real estate, until affirmed on appeal by a county court, (act of 1831, ch. 290, sec. 6,) and the clerk of the county court had no authority to issue a *fi. fa.* thereon, whether it was a *supersedeas* judgment (of which there is no proof) or not. The act of 1791, ch. 67, giving this power, is changed by that of 1801, ch. 62, secs. 1, 2. The 4th sec. of the act of 1809, ch. 205, refers solely to cases arising under the act of 1808, ch. 19, which was passed during the embargo, and has ceased to exist, being expressly excepted from the *continuing* acts of June 1809, ch. 15, and

November 1809, ch. 172. The proceedings under this writ were, therefore, not simply *voidable*, but absolutely *void*, and could confer no rights upon the appellant. 12 *Wend.*, 96, *Parmelee vs. Hitchcock.* 8 *Term Rep.*, 428, *Brown vs. Compton.* 3 *Cranch*, 331, *Wise vs. Withers.* 3 *Chitty's Pr.*, 75. 2 *Bouv. Law Dict.*, 479, *Title " Void."*

2nd. The appellant could acquire no title under the deed C, because the grantors had no authority to execute it.

3rd. There is no testimony in the cause upon which the appellant can claim, *as a creditor*, to set aside the deed A. There is no proof of the rendition of the judgment by any justice of the peace, and no sufficient foundation was laid for the introduction of *secondary proof*, by which alone it was attempted to prove that any such judgment was ever rendered.

ECCLESTON, J., delivered the opinion of this court.

This bill of complaint alleges that the deed, or covenant to stand seized, dated the 28th of November 1842, and filed as exhibit A, in this case, was executed by Wm. H. L. Fisher, with a fraudulent design, and the bill is filed for the purpose of having the deed vacated, annulled, and set aside, and asks for such other and further relief as the court may deem proper.

The bill states, that on the 20th day of August 1842, John Candler obtained a judgment against the said Fisher, before a justice of the peace, for the sum of $41.15, with interest thereon from the 17th day of the same month, and 83⅓ cents costs; that in August 1843, a *fieri facias* upon this judgment was issued by the clerk of Montgomery county court, and levied by the sheriff of the county; that, under a writ of *venditioni exponas*, the property so levied upon, was purchased by the complainant, at the sheriff's sale, on the 5th day of August 1844, who executed a deed for the same, on the 23rd day of November following.

The bill also states, that on the 7th day of March 1845, Wm. H. L. Fisher and his wife, for the consideration of $50, sold and conveyed to the complainant, L. W. Candler, the land mentioned in the previous proceedings, which last deed is filed as exhibit C.

Candler *vs.* Fisher & Wife, *et al.*

By the returns and deed of the sheriff, it will be seen that the land sold by him is the same which is described in exhibits A and C.

It is contended, by the complainant, that as purchaser of this land, he is entitled to have exhibit A set aside as fraudulent. Let us first examine his title as purchaser under the sheriff's sale.

According to the complainant's statement, the execution under which he purchased, was issued on a judgment rendered by a single magistrate. Now, such a judgment was not a lien upon the land; nor did it become such by any law relating to Montgomery county, whether the judgment was returned to or filed in the clerk's office, either before or after the decease of the justice, or other vacation in, or removal from, his office; or whether it was so returned or filed, either as an original or as a supersedeas judgment. And the clerk of that county court had no authority to issue the execution which it appears he did. The *fieri facias* and *venditioni exponas* were, therefore, not merely *irregular and voidable*, but were *nullities and absolutely void.* Consequently, the complainant could acquire no title to the land, under the sheriff's sale or conveyance. And when such proceedings are not simply *voidable*, but actually *void*, they may be so declared, even when called in question collaterally.

The appellant's solicitor has supposed that the clerk was authorized to issue a *fieri facias* upon a supersedeas judgment, confessed on a judgment rendered by a justice of the peace; and, in support of this view, has referred to the acts of 1791, ch. 67, sec. 4, and 1809, ch. 205, sec. 4. The former of those acts authorized judgments rendered in the Court of Appeals, general court, county courts, and by justices of the peace, to be superseded before such justices. The 4th section directed the supersedeas to be returned to the court where the original judgment was rendered, and if before a justice of the peace, then to the clerk of the county court of his county, by the next court after the confession, to be entered on record. And when the stay prescribed by the supersedeas expired, then an execution could be taken out. This act, in respect to

magistrates judgments, was altered by that of 1801, ch. 62. The first section of which enacts, "That from and after the twentieth day of March next, no justice of the peace of this State, before whom supersedeas on any judgment rendered by a single magistrate hath been taken, shall make return of any such supersedeas to the office of the said county court, for the purpose that the same should be recorded or filed therein by the clerk of the said county, any law to the contrary notwithstanding." And the second section provides:

"That any justice of the peace, before whom supersedeas shall or may be taken, from and after the said twentieth day of March next, or any other justice of the peace of said county, may and shall, at the request of the plaintiff, or any other person authorized by or on behalf of said plaintiff, issue execution by way of *capias ad satisfaciendum*, or *fieri facias*, against the principal debtor and his securities, or against either of them, after the expiration of the time so mentioned in the said supersedeas."

The 4th section of 1809, ch. 205, refers to cases arising under the act of 1808, ch. 19, which was passed during the embargo then existing; and that act has long since ceased to be in operation, as will appear by the acts of June 1809, ch. 15, and November 1809, ch. 172.

The *fieri facias* does not appear to have been issued upon a supersedeas; but whether it issued upon an original or on a supersedeas judgment, we have seen no law which authorized the clerk of Montgomery county court to issue such a writ, admitting the judgment may have been filed in his office, as insisted upon by the appellant.

The act of 1831, ch. 290, provides for the sale of real estate on a magistrate's judgment, but it is under a *fieri facias* to be issued by, and returned to, a magistrate, who, on receiving such return, is directed to deliver all the proceedings to the clerk of the county court, the court being authorized to examine the same, and finally to ratify and confirm the sale. If, however, the court should vacate the sale, and a second sale on the judgment becomes necessary, that must be under an execution from a justice of the peace. And this act, in its 6th

43    v. 11.

section, provides, "That no judgment rendered by any justice of the peace, shall, unless and until the same shall, on an appeal, be affirmed by a county court, be deemed and taken to be a lien on any lands, tenements, or real estate, or interest therein, legal or equitable."

Finding no law which authorized the execution relied on by the appellant, we do not think that he, as a purchaser, acquired any title to the land under the sheriff's sale. But if this be true, still it is contended by the appellant that he has such an interest in the judgment as gives him a right to impeach the deed of 1842 for fraud. On this ground, however, he cannot invalidate the deed, because there is not sufficient proof to establish the existence of the judgment, which will appear from the following examination of the evidence:

The paper marked "W. O. C.," purports to contain short copies of two judgments in favor of John Candler, use of Leonard W. Candler, vs. Wm. H. L. Fisher, both dated the 20th day of August 1842. The first being for $58.22, debt, with interest from the 28th day of June 1842, and $83\frac{1}{3}$ cents costs, and the second for $41.15, debt, with interest from the 17th day of August 1842, and $58\frac{1}{3}$ cents costs. In relation to this paper, the witness, Wm. O. Chappell, was asked whether the body of the same was in his handwriting, and if it was, then to say, "from what papers you (he) made out the same, and when and for what purpose, and whether the said paper 'W. O. C.' is a true and correct statement from the originals then before you, (him?")  In reply, he says: "It is in his handwriting; that he made them out from the original judgments that were on file in the clerk's office; that they are correct and true statements; and that he made them out that they might be issued upon."

To J. G. Hening, the clerk of the court, the following interrogatory was propounded: "Look upon the paper now shown, marked 'W. O. C.,' is the same one of the original papers on file in your office, in the case in which it purports to be endorsed? if yea, state whether you have looked for the papers therein referred to, and have been able to find the same." The answer to this is: "That it belongs to the case

in which it purports to be filed; that he has looked, and has not been able to find them." This witness likewise says: "That he found the paper marked 'W. O. C.' in the apartment in which the papers of that term are kept; that this paper was found in the papers labelled 'Judicials, November Term, 1843.'"

Daniel H. Candler, the justice by whom it is said the judgments were rendered, died in the year 1848, and, after his decease, a docket of his was returned, by his administrator, to the clerk's office of the county. From the testimony of the clerk, it appears, that after diligent search for dockets of this justice, he found but one, and that this does not contain the judgments, short copies of which purport to be given in the paper "W. O. C." And although the judgments do not appear upon any docket of the justice by whom they are alleged to have been rendered, Chappell, the only witness who speaks of having ever seen them, gives no explanation as to how they came into the clerk's office, or what satisfied him that they were the original judgments. Moreover, the paper "W. O. C." does not show by what justice the judgments were rendered, or, indeed, whether they were ever rendered by any justice, or had been certified or attested by any such officer.

Exhibit C purports to convey to the complainant, in fee-simple, all the right, title, claim and interest of the grantors, in and to the land therein mentioned, describing it as being the same land which was sold to the complainant by the sheriff, on the 5th day of August 1844, as would be seen "by the sheriff's return, filed among the records of said county court, at November term 1844, in a certain case wherein John Candler was plaintiff, and the said William H. L. Fisher was defendant."

Estimating the value of the land according to the evidence, and seeing that the consideration stated in exhibit C, is but $50, it must be apparent that the grantors executed the deed under the mistaken belief that the sheriff had legal authority to make the sale. And even if, under such circumstances, a court of equity might not deem it proper, at the instance of the grantors, to set aside the instrument for such a mistake, never-

theless, the court would hesitate to enforce it in aid of the grantee, who had knowledge of the transactions relating to the land before the date of the deed, and who has also held possession of the land ever since the conveyance of it to him by this instrument.

We think the decision below should be affirmed, with costs to the appellees, and a decree will be passed accordingly.

*Decree affirmed.*